CATHERINE D. CIOLEK, Plaintiff-Appellee, *v.* ADELINE B. JASKIEWICZ *et al.*, Defendants-Appellants.

First District (5th Division)    No. 60874

Opinion filed April 23, 1976.—Rehearing denied June 9, 1976.

Sidney Z. Karasik, of Chicago, for appellants.

Hoffman and Davis, of Chicago (Edward J. Hladis and John L. Leonard, of counsel), for appellee.

Mr. JUSTICE BARRETT delivered the opinion of the court:

Plaintiff brought this action to quiet title in chancery, seeking to rescind and set aside an assignment of a beneficial interest in a land trust. The trial court judge entered judgment for the plaintiff, declaring the challenged assignment null and void, and ordered the parties restored to their respective beneficial positions held prior to the last challenged assignment. Defendants appeal from the judgment of the trial court.

The evidence adduced at trial disclosed the following occurrences.

In 1952, plaintiff and her son acquired the property in issue, a two-flat apartment building. Title was taken in La Salle National Bank as trustee, with plaintiff and her son sharing the beneficial interest. Plaintiff and her son shared a second floor apartment until the son moved out in 1958. Upon leaving, plaintiff's son transferred his beneficial interest in the property to plaintiff, making plaintiff the sole beneficial owner of the property.

Plaintiff received rental income from the first floor and basement tenants. In 1967, at plaintiff's invitation, defendant Adeline Jaskiewicz, daughter of plaintiff (hereinafter Jaskiewicz), moved into one of the apartments with her children.

In the spring of 1967, plaintiff consulted attorney James T. Haddon, the son of plaintiff's former attorney who had recently died. The elder Haddon had originally advised plaintiff in the setting up of the land trust and in the making of subsequent assignments. The purpose of plaintiff's visit to attorney Haddon's office was a request to make a distribution of her property to her children under various conditions. In August, 1967, plaintiff and defendant Jaskiewicz met with the attorney and executed an agreement for disposition of the property. In April, 1968, Jaskiewicz called the attorney and asked him a question concerning the deductibility of certain expenses relating to the building. He informed her that since the property was not in her name at that time, she could not take the tax

deductions for the expenses and that her contingent interest would have to become a vested interest before such deductions would be permissible. He then prepared an assignment and acceptance on the La Salle National Bank trust forms and on April 19, 1968, plaintiff conveyed a 50 percent beneficial interest to Jaskiewicz.

In October, 1969, at the request of his clients, Haddon prepared another assignment of beneficial interest which created a joint tenancy from the then existing tenancy in common. Except for certain telephone conversations between the attorney and Jaskiewicz, Haddon stated that all his conversations with plaintiff were in the presence of Jaskiewicz.

On September 9, 1970, plaintiff executed an assignment transferring to Jaskiewicz all rights, titles and beneficial interest in the trust which plaintiff and Jaskiewicz had previously held as joint tenants. The assignment recited that it was plaintiff's intention to:

" * * * terminate said joint tenancy and to vest in said ADELINE JASKIEWICZ, all interest of the undersigned under said trust, together with the power to direct said trustee as to such interest."

Simultaneously with the execution of the above assignment, plaintiff and Jaskiewicz signed an agreement which in part provided:

"2. That in consideration of the acceptance of said assignment, ADELINE [Jaskiewicz], agrees to give to CATHERINE [Ciolek] a life estate interest in the property, agreeing that the aforesaid CATHERINE will not have to pay any rent during the time that she lives on the property.

3. That if the property is sold, it is agreed that at that time, the parties shall submit to JAMES T. HADDON, as Arbitrator, the question of the value of the life estate interest of CATHERINE, and the findings and judgment of JAMES T. HADDON shall be binding on the parties in the event of any dispute under the Agreement."

The assignment papers and the agreement were drawn by Haddon and executed in his office in the presence of the attorney, plaintiff, and Jaskiewicz.

On December 29, 1972, Jaskiewicz assigned a contingent interest to her daughter, defendant Griggs, which provided that upon Jaskiewicz's death, the beneficial interest in the property if still in existence, would transfer to Griggs, if Griggs was surviving.

Plaintiff stated that she first became aware that she had "signed off" the property when she attempted to borrow money for her son and attempted to use the trust property as collateral. She was informed that she no longer possessed a mortgageable interest.

Following the presentation of evidence, the trial court held in favor of plaintiff, and ordered that plaintiff recover 50 percent of the beneficial

interest in the property in trust; that the agreement dated September 9, 1970, between plaintiff and Jaskiewicz be declared null and void; that the assignment of the interest of plaintiff made to Jaskiewicz be declared null and void; that the assignment of December 29, 1972, creating a contingent interest in defendant Griggs, be declared null and void; and that plaintiff shall be restored to the position she held in the trust prior to September 9, 1970.

It is from the trial court decree that defendants appeal.

OPINION

On appeal, defendants raise three issues for this court's consideration: (1) whether in the absence of fraud or misrepresentation, a party is bound by a contract knowingly and willingly signed, especially where such party was advised by her own counsel, (2) whether the trial court erred in its rulings on the admission and exclusion of evidence, and (3) whether the judgment of the trial court was against the manifest weight of the evidence.

Defendants' first contention is that in the absence of fraud or misrepresentation, a party is bound by a contract knowingly and willingly signed, particularly when advised by her own counsel. Underlying defendants' contention is the premise that the issue of the validity of the contract providing for a transfer of a beneficial interest in trust property is to be resolved strictly with regard to basic contracts law, without consideration of the relationship between the parties at the time the agreement was entered into.

Defendants in their brief have cited and relied upon *Chicago Title & Trust Co. v. City of Chicago,* 321 Ill. App. 271, 52 N.E.2d 1019, and *Vargas v. Esquire, Inc.,* 166 F.2d 651 (7th Cir. 1948), *cert. denied,* 335 U.S. 813, 93 L. Ed. 368, 69 S. Ct. 29) for the proposition that it is the duty of any person before signing a contract, regardless of his ability to read, write and comprehend, to learn the contents of and understand the document before entering into the contractual relationship, and that in the absence of fraud or misrepresentation such person cannot relieve himself of the obligation to perform the contract. While we have no quarrel with this fundamental statement of the law of contracts under the cases cited, it is clear that neither court was required to consider the personal relationship between immediate family members as contracting parties that exists in the case at bar.

In *Chicago Title & Trust Co. v. City of Chicago,* plaintiff sued for a writ of *mandamus* commanding the city to pay plaintiff an alleged unpaid principal balance of $21,230 on a condemnation award of $30,660, with interest on the unpaid balance, together with interest amounting to $3,482 on $9,430, deposited with the county treasurer and later accepted by

plaintiff. On the day following initiation of this lawsuit, plaintiff procured an order in a condemnation proceeding directing the county treasurer to pay plaintiff the $9,430 previously deposited on account of the compensation theretofore awarded. The $9,430 was paid to plaintiff by check delivered to its attorney, who signed a receipt therefor, stamped upon a copy of the court order directing payment, stating in bold print that the amount was received "as full compensation for all right, title and interest in and improvements on the property described in the within order." Thereafter, the check was received and accepted by plaintiff. Among other contentions made by plaintiff, it argued that its attorney signed the receipt for the $9,430 without reading it and without knowing that it purported to be in full payment. In rejecting plaintiff's contention, the court merely stated that being able to read, and with good eyesight, and without any suggestion of fraud or circumvention preventing him from reading it, the law does not permit him to deny knowledge of the contents of the receipt the attorney signed.

In *Vargas,* plaintiff sued to cancel and set aside a contract entered into between the parties. The trial judge concluded as a matter of law that at the time of the execution of the contract a relationship of special trust existed between plaintiff and defendant's agent constituting a fiduciary relationship, and entered a decree setting aside and canceling the contract. On appeal, the reviewing court reversed the trial court, finding that the mere fact that plaintiff and defendant's agent were friends was not sufficient to establish a fiduciary relationship between the contracting parties, and the record did not indicate that any confidence had been reposed in defendant's agent or that the latter had influenced or dominated the plaintiff. The appellate court then concluded that, in the absence of fraud, a person in possession of all his faculties, who signs a contract, cannot relieve himself from the obligations of the contract by stating that he did not read it when he signed it, or did not know or understand what it contained.

Plaintiff relies upon the case of *Dombrow v. Dombrow,* 401 Ill. 324, 82 N.E.2d 47, as authority for resolving the case at bar. In *Dombrow,* the plaintiff, an 87-year-old mother, sued her two sons to rescind certain deeds conveying two parcels of real estate to her sons. One of the sons testified that it was the mother's desire to make the conveyances. The attorney who prepared the document, and who was the son's attorney, testified that her actions in signing the deed were voluntary. Upon disclosure by a son to plaintiff's daughters that he was the owner of the real estate, the mother filed suit against the son to set aside the deeds. The chancellor granted the requested relief in the trial court. On appeal, our supreme court affirmed the trial court judgment, finding that a fiduciary relationship existed between one son and his mother, and that he gained

her property by an abuse of that relationship. In discussing the term "fiduciary relation" the court stated:

"It is true, as appellant contends, that a fiduciary or confidential relationship will not be presumed from the relationship of parent and child. *(McCrillis v. Utterback,* 397 Ill. 550; *O'Malley v. Deany,* 384 Ill. 484.) However, as pointed out in *Lipscomb v. Allen,* 298 Ill. 537, and *Krieg v. Felgner,* 400 Ill. 113, 'The term fiduciary or confidential relation, as used in this connection, is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The origin of the confidence and source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. The only question is, does such a relation in fact exist? *Mayrand v. Mayrand,* 194 Ill. 45.' "

■■ A review of the evidence before this court clearly indicates the existence of a fiduciary relationship between plaintiff and Jaskiewicz, and on that basis alone we find *Vargas* and *Chicago Title & Trust Co.* distinguishable from the instant case. Clearly no fiduciary relationship existed between the parties in *Chicago Title & Trust Co.* On the contrary, plaintiff, acting through its attorney, and defendant were engaged in an "arms length transaction." No evidence was adduced that plaintiff placed any reliance or reposed any trust in defendant, or that defendant exerted any dominance or influence on plaintiff. For plaintiff to have suggested that a fiduciary relationship existed between it and defendant would have been untenable. The reviewing court in *Vargas* also found that no fiduciary relationship existed between the contracting parties at the time the agreement was entered. It is the absence of this special relationship between contracting parties that leads this court to conclude that both *Vargas* and *Chicago Title & Trust* are distinguishable and therefore inapplicable to the case at bar.

In the instant case, plaintiff was approximately 78 years of age when she entered into the agreement transferring her beneficial interest to Jaskiewicz. The record is replete with testimony indicating plaintiff's substantial difficulty in reading and understanding either the written or spoken English language and her reliance for understanding upon Jaskiewicz. Discussions prior to the September 9, 1970, agreement indicate that Jaskiewicz gave the impression that whatever the substance of the transaction, plaintiff was only giving some form of tax benefit to Jaskiewicz. Plaintiff testified to the trust she placed in Jaskiewicz concerning these matters. Concerning the meeting between plaintiff, Jaskiewicz and the attorney, plaintiff testified as follows: That Jaskiewicz

wanted plaintiff to sign the papers "so she would get income tax for her income tax;" that Jaskiewicz bothered her until she agreed to sign the document; that plaintiff desired to take somebody with them to the attorney's office, but Jaskiewicz would not permit anyone else to accompany them; that plaintiff placed her trust in Jaskiewicz. In response to a question of what anyone said when plaintiff, Jaskiewicz and the attorney met to sign the agreement, plaintiff stated:

"I cannot say because she was sitting with him, and they're talking and writing, and I don't know. I don't read it, and when we're through writing, they call me, come Mama, sign it."

In response to a question concerning whether the attorney or Jaskiewicz told her that she was "signing off" the house completely, plaintiff responded:

"I don't say I sign off. I just sign it for her income tax. That's what I thought that was, only for income tax."

Plaintiff testified that she first learned that she transferred her beneficial interest in the trust property to Jaskiewicz when she visited a mortgage company and attempted to submit the property as collateral on a loan, and was then informed she no longer possessed an interest in the property. Plaintiff stated that when she later confronted Jaskiewicz and asked her to return the property, Jaskiewicz informed her that she was going to die and refused to transfer the property back. In response to a question whether the attorney read the papers to plaintiff before she signed them plaintiff stated:

"When I was through signing that I signed I was talking together, then he asked me sign it, and I sign it. I don't know anything else."

Upon plaintiff's questioning by the court, the following colloquy occurred:

"WITNESS: Judge, I know I signed for her income tax.

COURT: Did you understand that by signing it for her income tax you were giving it to her?

WITNESS: No, no judge. I just for the income tax, that's all she wants it.

COURT: You mean, what you are telling me is that the only thing that you intended to do was to help her with her income tax by putting her name on it?

WITNESS: Yes Judge. I wanted her to have a little money because she has the children so she could get more income tax if she had the name on the house, that's what I figured.

COURT: Did they explain to you how that would help her by having her name on the house?

WITNESS: No, no. Nobody explained to me.
❖ ❖ ❖

COURT: Well, what did that have to do with the income tax?
WITNESS: She told me, 'Mama, if you have your name on your paper, you get more money. Mama, can you sign the house on me?' I says, 'all right, I sign.' That's all it was. That's all I know."

Jaskiewicz testified that she is the daughter of plaintiff; that plaintiff made the September 9, 1970 appointment with the attorney; that plaintiff informed her that the purpose of going to see the attorney was to "turn the house over to me." Jaskiewicz stated that during the course of the September 9, 1970, meeting, the attorney read the papers concerning the transfer of the property and asked at least 12 times if plaintiff fully understood, and each time plaintiff answered affirmatively. Jaskiewicz stated she also asked plaintiff if she understood and plaintiff responded affirmatively. Jaskiewicz testified to telephoning the attorney several times concerning preparation of documents; that plaintiff was present with defendant when these conversations occurred; that anytime she wrote a letter to the attorney, plaintiff was present and that she read the letter to plaintiff; and that on previous visits to the attorney's office, including September 9, 1970, if plaintiff did not understand anything she explained it to her in Polish. Jaskiewicz stated she never refused plaintiff permission to bring anyone else to attend the meetings with the attorney.

James Haddon, attorney, testified that he did work for both plaintiff and Jaskiewicz. While he was not absolutely certain as to who directed him to prepare the documents for the transfer of the trust property, he believed Jaskiewicz probably initiated such action through a telephone conversation. Concerning the meeting of September 9, 1970, he stated that he believed he had explained to both parties the substance of the agreement prepared which gave ownership of the entire property to Jaskiewicz and reserved a life estate for plaintiff. The attorney admitted he did not tell plaintiff that under the life expectancy table then effective, the life estate was valueless. Concerning future payments, Haddon did not recall telling plaintiff anything other than she would not have to pay rent. The attorney stated he discussed with plaintiff the reasons why Jaskiewicz wanted the property and that plaintiff understood them to the best of his recollection. He testified that in his office, on September 9, 1970, a discussion occurred concerning possible savings of income tax to Jaskiewicz, and that the question of taxes had been discussed on more than one occasion between the attorney and Jaskiewicz.

■■ Once a fiduciary relationship has been established, the law presumes that any transaction between the parties in which the dominant party has profited, is fraudulent. *(Dombrow v. Dombrow,* 401 Ill. 324, 82 N.E.2d 47; *Jones v. Robley,* 402 Ill. 302, 83 N.E.2d 570; *Sawyer v. Creighton,* 403 Ill. 364, 86 N.E.2d 242.) The *Dombrow* court then proceeded to discuss the effects of such presumption:

"This presumption is not conclusive but may be rebutted by clear and convincing proof that the dominant party has exercised good faith and has not betrayed the confidence reposed in him. The burden rests upon the dominant party to produce such evidence, and if the burden is not discharged the transaction will be set aside in equity. (*Clark v. Clark,* 398 Ill. 592; *McCord v. Roberts,* 334 Ill. 233.) The important factors in determining whether a particular transaction is fair include a showing by the fiduciary (1) that he has made a free and frank disclosure of all the relevant information which he had, (2) that the consideration was adequate, and (3) that the principal had competent and independent advice before completing the transaction. *Krieg v. Felgner,* 400 Ill. 113; *Schueler v. Blomstrand,* 394 Ill. 600."

We believe the trial court could properly conclude that Jaskiewicz has failed to prove that she made a free and frank disclosure of all the relevant information which she possessed concerning the nature of this transaction. Assuming that the trial court chose to believe plaintiff, and not Jaskiewicz, a review of the record indicates that prior to entering into the September 9, 1970 agreement, discussions between plaintiff and Jaskiewicz left plaintiff with the sole impression that the only result of any agreement would be to provide Jaskiewicz with certain tax benefits and that Jaskiewicz "bothered" plaintiff until she agreed to participate in the transaction resulting in the transfer of the trust property. Plaintiff stated that no one explained to her how the tax benefits would occur if she signed the document. Plaintiff testified that she desired to have someone accompany them on the September 9, 1970, meeting in the attorney's office, but Jaskiewicz refused plaintiff's request. Plaintiff stated that the substance of the agreement was not explained to her by Jaskiewicz, and that she just signed it for her income tax, upon Jaskiewicz's instruction that she sign the document. Further evidence of Jaskiewicz's lack of disclosure may be adduced from plaintiff's testimony that she first learned of the transfer of property when she visited a mortgage company and attempted to present the property as collateral for a loan subsequent to September 9, 1970. It is therefore clear from the record that Jaskiewicz failed to make a free and frank disclosure of all relevant information that she possessed as to the substance of the September 9, 1970, agreement, and that the trial court could properly conclude that the agreement constituted a breach of a fiduciary relationship and therefore a fraudulent transaction.

■■ Defendant next contends that the trial court erred in refusing to allow her to introduce all of her evidence relating to the value of the consideration given for plaintiff's beneficial interest in the property. Defendant claims that (1) she was not given the opportunity to establish

that the life estate which she gave plaintiff had value, and (2) that other nonmonetary consideration was exchanged by the parties. Although the court did not allow the admission of all evidence which defendant wished to introduce, it did allow her to establish through the use of a life expectancy table and the testimony of a chartered life underwriter that plaintiff had a life expectancy of up to eight years and thus, inferentially, that there was substantial value in the life estate which was given plaintiff. Moreover, despite the fact that defendant was precluded from questioning Haddon, the attorney, concerning his knowledge of services performed by her for plaintiff, the record reveals that Haddon did testify that consideration other than money passed between the parties. Consequently, it is our belief that the rulings limiting this evidence do not constitute prejudicial error.

The final issue raised for this court's consideration is defendants' contention that the judgment of the trial court is against the manifest weight of the evidence.

The evidence presented at trial disclosed that the plaintiff was of advanced age at the time when she entered into the agreement; that plaintiff had substantial difficulties in understanding both written and spoken language; that plaintiff placed significant reliance upon and trust in Jaskiewicz; that any discussion which occurred prior to the signing of the agreement led plaintiff to conclude that her actions would only result in providing some form of tax benefit to Jaskiewicz; that Jaskiewicz "bothered" plaintiff until she agreed to sign the documents resulting in the transfer of the trust property; and that Jaskiewicz would not permit anyone else to accompany plaintiff and Jaskiewicz when they visited the attorney's office. This court has reviewed and is totally aware of testimony offered by two witnesses which conflicts with much of plaintiff's testimony.

■■■ It is well established that a judgment will not be set aside on appeal merely because it is against the weight of the evidence, but rather the judgment must be against the manifest weight of the evidence. (*Friesland v. City of Litchfield,* 24 Ill. App. 2d 390, 164 N.E.2d 606; *Scrimager v. Cabot Corp.,* 23 Ill. App. 3d 193, 318 N.E.2d 521; *Winston v. Chicago Transit Authority,* 2 Ill. App. 3d 151, 276 N.E.2d 65.) The determination of the credibility of the witnesses and the weight of evidence where there is some evidence on essential points is primarily for the finder of fact. (*Haberer v. Moorman Manufacturing Co.,* 341 Ill. App. 521, 94 N.E.2d 611.) The principle of law that a finding on conflicting evidence ordinarily will not be disturbed applies even though it may be supported by a smaller number of witnesses. *Hellwig v. Lomelino,* 309 Ill. App. 369, 33 N.E.2d 174.

Applying the above mentioned principles of law to the facts at bar, we

cannot conclude that the judgment of the trial court was against the manifest weight of the evidence.

For the reasons stated above, we affirm the judgment of the lower court.

Affirmed.

LORENZ, P. J., and DRUCKER, J., concur.