BADGER BUILDING CORPORATION, Plaintiff and Counterdefendant-Appellant, *v.* KARLO GREGORIC, Defendant and Counterplaintiff-Appellee.— (JULIE PRAZNIK, Indiv. and as Next Friend of Michael Dobbs *et al.*, Intervenor-Appellee.)

First District (1st Division)    No. 80-2329

Opinion filed December 14, 1981.

Edwin M. Raffel and Selwyn Coleman, both of Chicago, for appellant.

Leonard R. Anderson, of South Holland, and Edward T. Joyce, Peter Ordower, and William J. Harte, all of Chicago, for appellees.

JUSTICE McGLOON delivered the opinion of the court:

Badger Building Corporation filed a complaint for specific performance of a contract against Karlo Gregoric. Karlo Gregoric had been deeded the property which is the subject matter of this lawsuit pursuant to the terms of a sales contract, which contract provided that in the event Gregoric was unable to secure mortgage financing within 60 days, the property would be deeded back to the grantor, Badger Building Corporation.

Karlo Gregoric filed a counterclaim against Badger Building Corporation claiming monies were due and owing to him based upon certain N.S.F. checks and services rendered.

Julie Praznik filed an intervening complaint, on behalf of herself and as next friend of certain minor grandchildren of herself and her then deceased former husband, Anton Konchan. In her complaint, she claimed a constructive trust in the subject real property.

The trial court ruled against Badger Building Corporation on its complaint and in favor of Julie Praznik on her intervening complaint, and also in favor of Karlo Gregoric on the counterclaim and against Badger Building Corporation in the sum of approximately $14,000 plus interest.

On appeal, Badger Building Corporation and Karlo Gregoric argue that the trial court erred in declaring Julie Praznik constructive trustee of the real property for the benefit of her grandchildren. Badger Building Corporation additionally argues that the trial court erred in awarding Karlo Gregoric approximately $14,000 in money damages.

We affirm in part, reverse in part, and remand.

Anton Konchan (Anton) emigrated to the United States and established a successful manufacturing business known as Badger Manufacturing Company (Badger Manufacturing) and a smaller company known as Badger Building Corporation (Badger Building). During his lifetime, Anton acquired a number of assets, including a six-acre tract of property in Vilas County, Wisconsin, which he and his family used as a summer vacation home. Badger Manufacturing held title to the property. Four acres of the six-acre tract of land is the subject matter of this dispute (the four acres will be referred to as "the Wisconsin property").

Anton died in 1977. He was survived by his former wife Julie Konchan-Praznik (Julie), his son William Konchan (William), William's two children and the five children of his deceased daughter Antoinette Konchan-Dobbs (Antoinette).

Julie and Anton were divorced in 1950. For more than 25 years after the divorce, Julie regularly visited the family residence in Wisconsin and spent much of her time there with Anton, their children and grandchildren. After the divorce, Julie remained an officer, and for a time, a

director of the Badger companies. When Antoinette died in 1969, Julie cared for her daughter's five children. She later adopted them.

Karlo Gregoric (Karlo) emigrated to this country in 1966 and lived with his aunt, who was Anton's housekeeper. In January 1967, Karlo began working as a punch-press operator at Badger Manufacturing. He worked at the company for two years without pay. Later, he was paid approximately $5,000 for his two years of full-time service. He was promoted to foreman in 1969 and then to a plant manager in 1972. In addition to working at Badger Manufacturing, Karlo worked at Badger Building and another company known as Badger Motel Corporation. He also worked evenings and weekends for 1½ years without compensation helping William build his home.

William was the only son of Anton and Julie. In 1959, Anton transferred to William by way of gift all of the stock of Badger Building. In 1968, Anton transferred to William all of the stock of Badger Manufacturing and the Wisconsin property. According to Julie, the latter transfer was subject to certain conditions which were intended to protect Anton's own interests and those of his grandchildren and Antoinette. Julie testified that among other things, William and Anton agreed that the Wisconsin property would never be used for business purposes or as security for any company indebtedness.

The Badger ventures under William's control began to experience economic troubles in early 1974. William used the Wisconsin property as collateral for a loan to the Badger companies. Title was transferred from Badger Manufacturing to Union Realty Company. Eventually, Union Realty reconveyed title to Badger Manufacturing. In February 1975, title to the Wisconsin property was transferred from Badger Manufacturing, which was experiencing substantial financial difficulty, to Badger Building. The purpose of this transfer was to extinguish a debt owed to Badger Building by Badger Manufacturing in the amount of $180,000.

The financial difficulties of Badger Building increased. William asked Karlo to accept title to the Wisconsin property to protect it from creditors of Badger Building. Karlo agreed. In order to make the conveyance appear to be a *bona fide* transaction, William had a contract drawn up. The contract indicated that Karlo had paid $30,000 in earnest money. Karlo wrote a $30,000 check, but the check was never negotiated. William was aware that Karlo did not have funds sufficient to back up the check. Despite the lack of initial consideration for the contract, the contract and deed of sale were executed. A rider to the purported contract called for a reconveyance to Badger Building in the event that Karlo was unable to obtain mortgage financing within 60 days. On April 11, 1975, the deed was signed and delivered to Karlo. On April 21, the deed was recorded in Vilas County, Wisconsin. That same day, Karlo and

William listed the property for sale for $185,000, $70,000 over the contract price to Karlo.

Karlo continued working for William and the Badger companies from January to September, 1975, based on William's promise that he would pay Karlo $350 per week. During that period, Karlo purchased $1,178.25 worth of goods from the auction of assets of Badger Manufacturing. He testified that William promised to reimburse him and that they would start a new business together and use the purchased items in the business.

Badger Building filed a complaint for specific performance against Karlo. It sought to enforce the term of the sales contract which provided that if Karlo were unable to secure financing within 60 days, he must reconvey the property to Badger Building. Karlo then filed a counterclaim against Badger Building, claiming that the company owed him money for services rendered and for the checks written to him which were marked insufficient funds.

Julie filed an intervening complaint on behalf of herself and as next friend of her grandchildren. In her complaint, Julie claimed that a constructive trust should be imposed upon the Wisconsin property for the benefit of her grandchildren.

The trial court found for Julie and against Badger Building and declared the Wisconsin property to be constructive trust property. Badger Building appeals, and Karlo cross-appeals from the order. Additionally, the court found for Karlo and against Badger Building and awarded Karlo $14,177.14 plus interest in money damages. Badger Building appeals from that order.

Badger Building and Karlo argue that the trial court erred in declaring Julie constructive trustee of the Wisconsin property for the benefit of her grandchildren. Julie contends that the manifest weight of the evidence supports the trial court's finding that a fiduciary relationship existed between William and Anton and that William abused that relationship when he used the Wisconsin property for business purposes. She argues that the trial court did not err in imposing a constructive trust.

■■ Constructive trusts are divided into two general classes—one in which actual fraud is considered as equitable grounds for raising the trust, and the other, where there exists a fiduciary or confidential relationship and a subsequent abuse of that relationship. (*Ray v. Winter* (1977), 67 Ill. 2d 296, 303, 367 N.E.2d 678; *David v. Russo* (1980), 91 Ill. App. 3d 1023, 1027, 415 N.E.2d 531.) Factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship and disparity of age between the grantor and the grantee, the health and mental condition of the grantor and the extent to which the grantor entrusted the handling of his business and financial affairs to and reposed faith and confidence in

the grantee. *Desiderato v. Sullivan* (1980), 84 Ill. App. 3d 1117, 1121, 406 N.E.2d 116; *Wold v. Wold* (1976), 43 Ill. App. 3d 773, 777, 357 N.E.2d 627.

Here, Anton and William were father and son. Although the record does not reflect the exact disparity of age between the two, it is not unreasonable to assume that Anton was at least 20 years William's senior. In 1968 when Anton transferred the Badger Manufacturing stock to William, Anton's health was deteriorating, he no longer came to the office on a regular basis and William had to drive him around because he was unable to drive himself. The evidence with regard to these three factors does not conclusively establish the existence of a fiduciary relationship between Anton and William. (See *Desiderato v. Sullivan* (1980), 84 Ill. App. 3d 1117, 406 N.E.2d 116.) The fourth factor, the extent to which Anton entrusted his financial affairs and reposed confidence in William, is the key to determining whether the relationship between the two should be characterized as a fiduciary relationship.

In 1959, Anton transferred to William by way of gift all of the Badger Building stock. In 1968, William threatened to leave the family business unless his father agreed to transfer all of the Badger Manufacturing stock to him as well. Anton acceded to William's demand. Since title to the Wisconsin property was held by Badger Manufacturing, title to that property was transferred to William along with the stock. According to Julie and Karlo, William expressly agreed to Anton's wishes that the property be kept for the family during Anton's life and for Anton's grandchildren after Anton's death. Further, both Julie and Karlo testified that William promised that the Wisconsin property would not be sold or mortgaged or used for business purposes. The evidence clearly shows that a fiduciary relationship existed between Anton and William at the time Anton transferred the Badger Manufacturing stock to William.

■■ Having established the existence of a fiduciary relationship, we must now consider whether William abused that relationship. In 1974, William used the Wisconsin property as collateral security for a loan to the Badger companies. In 1975, he staged a "sale" of that property to Karlo. In both of these transactions, William acted contrary to his father's expressed desires. In so doing, he abused the fiduciary relationship.

William testified that when Anton transferred the stock to him, Anton placed no restrictions on the use of the Wisconsin property. Commenting on William's testimony, the trial judge noted that it "lack[ed] all credibility," "was a fabrication of a false story given with the intent to deceive the court," and "showed [William] to be an habitual liar." Since the trial judge is in a superior position to assess the witness' credibility, a reviewing court should not disturb the trial court's finding unless it is against the manifest weight of the evidence. (*Rapp v. Bowers* (1976), 38 Ill. App. 3d 668, 671, 348 N.E.2d 529.) In light of the trial judge's harsh comments regarding

William's credibility and the patent inconsistencies in William's trial testimony, we choose not to disturb the trial court's finding. The imposition of a constructive trust was proper.

■■ Badger Building additionally argues that the trial court erred in awarding Karlo approximately $14,000 in money damages. In his amended counterclaim, Karlo claimed he was entitled to reimbursement in the amounts of: $927.14 for checks written and returned marked insufficient funds; $1,500 for equipment he purchased for the Badger companies; and, $11,100 for services rendered as general manager of Badger Building and Badger Manufacturing between January 1972 and January 1975.

We have carefully examined the record and find that it was proper for the trial court to award Karlo money damages. We question, however, whether damages in the amount of $14,000 were proper. Clearly, Karlo is entitled to at least $927.14, the sum necessary to reimburse him for checks written to him and returned marked insufficient funds. But it is unclear whether he is actually entitled to the $11,100 for services rendered to the Badger companies between January 1972 and January 1975. Karlo himself testified that he was salaried by one or both of the companies during this period. It appears that the trial court, in awarding Karlo the amount requested in his amended counterclaim, was greatly influenced by the numerous inconsistencies and contradictions in William's testimony. It may well be that Karlo is entitled to the entire amount he requested. We believe, however, that a hearing on the matter is warranted.

In addition, we believe that the trial court should consider whether the grandchildren should share as *per stirpes* or *per capita* beneficiaries.

In sum, we affirm the trial court's finding against Badger Building and in favor of Julie on the constructive trust issue. We reverse and remand for a hearing on the amount of damages to which Karlo is entitled from Badger Building. Further, we remand for a hearing as to the proper distribution of the trust property.

For the foregoing reasons, we affirm in part, reverse in part, and remand with directions.

Judgment affirmed in part, reversed in part; cause remanded.

GOLDBERG and O'CONNOR, JJ., concur.