CORBIT WAYNE GREGORY, Plaintiff-Appellant, *v.* E. ALLEN BERNARDI, Acting Director, Department of Labor, *et al.*, Defendants-Appellees.

Second District   No. 2—83—0591

Opinion filed June 29, 1984.

Kevin M. Kane and Barry A. Schultz, both of Prairie State Legal Services, Inc., of Waukegan, and Bernard H. Shapiro, of Prairie State Legal Services, Inc., of Rockford, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Kathleen M. Lien and Patricia Rosen, Assistant Attorneys General, of counsel), for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

A claimant for unemployment compensation benefits brought this action for judicial review of a determination of the Board of Review of the Department of Labor, which denied his claim. The circuit court of Lake County affirmed the decision of the Board of Review. Because the Board of Review employed the proper standard for determining the case and because the Board's findings are supported by the evidence, we affirm the circuit court's order.

In January 1982, plaintiff, Corbit Wayne Gregory, was employed by Campbell Cab in its final assembly department. After missing several days of work during that month, he was fired. His claim for unemployment compensation benefits was denied by a claims adjudicator of the Department of Labor, who determined that Gregory was ineligible for benefits because he was discharged for misconduct. See Ill. Rev. Stat. 1981, ch. 48, par. 432.

Gregory then appealed to a referee of the Department of Labor, Division of Unemployment Compensation. The referee conducted a hearing at which three persons testified: Gregory; Mrs. James Campbell, the vice-president of Campbell Cab; and a party referred to in the record as "Ms. Gsemuf," but whom Gregory's brief represents to be Gail Grenus. The referee found that Gregory was discharged on January 15, 1982, after missing two days of work due to transportation problems. The referee concluded that no misconduct had occurred and that Gregory was eligible for benefits.

Campbell Cab then appealed the referee's decision to the Board of Review of the Department of Labor (Board). The Board made findings supportive of the employer, concluded that Gregory had been discharged for misconduct, and reversed the decision of the referee. On October 4, 1982, Gregory filed this action pursuant to the Administrative Review Law (Ill. Rev. Stat. 1981, ch. 110, pars. 3—101, 3—112) for judicial review of the Board's decision.

■ Gregory first contends that the Board erred in relying upon evidence outside the record, thereby denying him his due process

rights of notice, cross-examination and opportunity to rebut regarding the additional evidence. The additional evidence to which Gregory refers is a "summary of events" contained in Campbell Cab's letter of June 15, 1982, to the Board requesting appeal of the referee's decision.

Gregory relies upon the rule that an administrative agency cannot base its decision upon facts, data, or testimony which does not appear in the record; findings must be based on evidence introduced in the case, and nothing can be treated as evidence which is not introduced as such. (*Cook County Federal Savings & Loan Association v. Griffin* (1979), 73 Ill. App. 3d 210, 391 N.E.2d 473; *Hazelton v. Zoning Board of Appeals* (1977), 48 Ill. App. 3d 348, 363 N.E.2d 44.) Defendants do not dispute this rule, but rather point out that the Board's decision explicitly asserted that it did "not deem it necessary to take additional evidence."

Despite this assertion of the Board, two of its findings of fact have no basis in the record of the proceedings before the referee: (1) that Gregory was late to work on January 11, 1982, and (2) that Gregory did not call in to report his absence on January 12, 1982. Because both of these facts are asserted in the June 15 letter, it is apparent that the Board did consider evidentiary material not properly part of the record. Defendants do *not* attempt to justify the use of factual material from the letter requesting appeal as the Board's "tak[ing of] additional evidence in hearing such appeals" as provided for by statute. (See Ill. Rev. Stat. 1981, ch. 48, par. 473.) By its improper consideration of the June 15 letter as evidence, the Board deprived Gregory of his due process rights with regard to the evidentiary material in the June 15 letter. See *Cook County Federal Savings & Loan Association v. Griffin* (1979), 73 Ill. App. 3d 210, 391 N.E.2d 473; *Hazelton v. Zoning Board of Appeals* (1977), 48 Ill. App. 3d 348, 363 N.E.2d 44.

However, we do not believe that the two findings improperly gleaned from the contents of the June 15 letter were enough, by themselves, to affect the decision reached by the Board. The Board recited, in support of its decision, several other instances of Gregory's failing to be at work and failing to call in and notify his employer that he would be absent. The concept of harmless error is applicable to judicial review of unemployment compensation administrative proceedings. (See *Nendza v. Board of Review* (1982), 105 Ill. App. 3d 437, 444, 434 N.E.2d 470, 475; *Nestle Co. v. Johnson* (1979), 68 Ill. App. 3d 17, 20, 385 N.E.2d 793, 796.) We hold that this error, considered alone, caused Gregory no prejudice and does not warrant reversal.

■■ Gregory's second contention is that the trial court and the Board erred in failing to give substantial weight to the referee's findings of fact. The Board, in rendering its decision, made an independent assessment of the evidence in the record, rather than merely determining the supportability of the referee's findings. We must determine what deference the Board and, in turn, the courts owed to the referee's findings of fact. Neither the statute nor the cases answer this question directly. However, both of these sources, as we shall demonstrate, indicate inferentially that the Board, as final trier of fact, need only consider the findings of the referee, but without giving them the sort of weight a reviewing court must give a trier of fact.

Pursuant to statute, no decision of a referee in an unemployment compensation case is subject to direct judicial review. (Ill. Rev. Stat. 1981, ch. 48, par. 471, and ch. 110, par. 265; see *People ex rel. Olin Corp. v. Department of Labor* (1981), 95 Ill. App. 3d 1108, 420 N.E.2d 1043.) To be challenged, the decision of a referee must be appealed to the Board within 30 days. (Ill. Rev. Stat. 1981, ch. 48, par. 471.) The Board may then "affirm, modify, or set aside any decision of a Referee [and] may take additional evidence in hearing such appeals" (Ill. Rev. Stat. 1981, ch. 48, par. 473). The Board is charged with rendering "findings" as well as a "decision." (Ill. Rev. Stat. 1981, ch. 48, par. 473.) Decisions of the Board are then subject to judicial review in accordance with the provisions of the Administrative Review Law (formerly the Administrative Review Act). Ill. Rev. Stat., 1982 Supp., ch. 48, par. 520.

Thus, the referee is not *the* finder of fact, but merely one such finder, along with the claims adjudicator (see Ill. Rev. Stat. 1981, ch. 48, par. 451) and the Board, within the Department of Labor's procedure for determining the validity of unemployment compensation claims. The Board, as the ultimate finder of fact, is not bound by the referee's decision and may actually expand the record prepared by the referee. It is the decision of the Board, not the referee, which is reviewed by the courts. From this statutory framework, we infer that the Board is to make its own independent assessment of the evidence on record and need not defer to the findings of the referee the way the courts must defer to the findings of the Board.

Consistently with this statutory framework, it has been held that the function of the Board is to determine the facts from all the evidence and circumstances (see *Brown v. Board of Review* (1972), 8 Ill. App. 3d 19, 23, 289 N.E.2d 40, 43) and that the function of the court is to ascertain whether the *Board's* findings, as part of the final ad-

ministrative decision, are supported by the manifest weight of the evidence (see *Brown v. Board of Review* (1972), 8 Ill. App. 3d 19, 289 N.E.2d 40; *Yadro v. Bowling* (1980), 91 Ill. App. 3d 889, 414 N.E.2d 1244; *Skirin v. Bowling* (1980), 86 Ill. App. 3d 954, 408 N.E.2d 355). While in these cases the Board's findings did not differ from the referee, two earlier supreme court opinions held that the court's role was to determine whether the findings of fact as resolved by the Director of Labor were supported by the manifest weight of the evidence, despite the fact that in each case the Director had reversed his deputy's initial determination. *Shell Oil Co. v. Cummins* (1955), 7 Ill. 2d 329; *Robert S. Abbott Publishing Co. v. Annunzio* (1953), 414 Ill. 559.

Gregory cites numerous cases for the propositions that the trier of fact alone should judge the credibility of witnesses and reconcile conflicting evidence and that a reviewing body should not disturb the trier's findings unless they are against the manifest weight of the evidence. (*Stillwell v. Continental Illinois National Bank & Trust Co.* (1964), 31 Ill. 2d 546; *Badger Building Corp. v. Gregoric* (1981), 102 Ill. App. 3d 594, 430 N.E.2d 561; *Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116, 426 N.E.2d 604; *Marth v. Illinois Weather-Seal, Inc.* (1977), 50 Ill. App. 3d 577, 365 N.E.2d 588; *Ciolek v. Jaskiewicz* (1976), 38 Ill. App. 3d 822, 349 N.E.2d 914; *Pittman v. Lageschulte* (1963), 45 Ill. App. 2d 207, 195 N.E.2d 394; *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 254 N.E.2d 814.) All of these cases except the last involved the standard of review of the appellate court over trial courts. *Daley v. Jack's Tivoli Liquor Lounge, Inc.* involved review by the appellate court, trial court, and the State's Liquor Appeal Commission of a liquor license revocation by the local liquor control commission. By statute in that case, the State commission's review of the local commissioner's findings was limited to determining whether they were supported by substantial evidence. (Ill. Rev. Stat. 1967, ch. 43, par. 153.) Thus, these cases do not aid Gregory here because the Board itself, unlike an appellate court or the State License Appeal Commission under the circumstances in *Daley v. Jack's Tivoli Liquor Lounge, Inc.*, is a trier of fact and is not limited to a manifest-weight-of-the-evidence standard of review.

However, while the Board is to make an independent assessment of the evidence, it also appears that the Board must give consideration to the findings of the referee. Where a hearing examiner in an administrative proceeding is required by statute to make a report, that report is part of the record and must be considered by the re-

viewing court. (*Ramos v. Local Liquor Control Commission* (1978), 67 Ill. App. 3d 340, 384 N.E.2d 912.) But where an administrative agency and not the hearing examiner is responsible for the decision, the agency need not reverse only when the examiner's findings are "clearly erroneous"; rather, the agency must make its own decision based on the evidence in the record. (67 Ill. App. 3d 340, 344-45, 384 N.E.2d 912, 916.) Gregory's argument that the hearer of testimonial evidence is the only proper judge of witness credibility has been answered in the administrative law context by the requirement that the hearing officer must convey his findings, conclusions and impressions of conflicting testimony to the decision-making body. (*Starnawski v. License Appeal Com.* (1981), 101 Ill. App. 3d 1050, 428 N.E.2d 1102; *American Welding Supply Co. v. Department of Revenue* (1982), 106 Ill. App. 3d 93, 435 N.E.2d 761.) The decision-making body is not bound by such findings, but the findings would be of unquestionable value to the body where the decision-makers took no part in the actual presentation of evidence. (*Southern Illinois Asphalt Co. v. Environmental Protection Agency* (1973), 15 Ill. App. 3d 66, 80, 303 N.E.2d 606, 616, *aff'd* (1975), 60 Ill. 2d 204.) Thus, the Board here was required to consider the findings of the referee as part of the record, but was free to consider the whole record in order to reach its own independent findings.[1]

■ Gregory's final contention is that the Board's decision is against the manifest weight of the evidence and that the referee's decision is supported by substantial evidence. In an unemployment compensation case, the court's function is limited to ascertaining whether findings of the Board are supported by the manifest weight of the evidence; the court may neither substitute its own judgment nor overturn the Board's findings unless they are without substantial support in the record. (*Flores v. Board of Review* (1979), 74 Ill. App. 3d 667, 393 N.E.2d 638; *Skirin v. Bowling* (1980), 86 Ill. App. 3d 954, 408 N.E.2d 355.) Thus, whether the referee's decision is supported by substantial evidence is not relevant to this court's determination. Pursu-

---

[1]Subsequent to oral argument, defendants asked leave of this court to cite *Starkey v. Civil Service Com.* (1983), 97 Ill. 2d 91, as supplemental authority. We grant leave and observe that *Starkey* supports our position. There, our supreme court noted that the Industrial Commission, regardless of whether it hears additional evidence, is not bound to accept the findings of the arbitrator in the workers' compensation area and held that this was analogous to the comparative roles of the Civil Service Commission and its hearing officer in the State employee discharge area (97 Ill. 2d 91, 101). Such an analogy is also appropriate to the comparative roles of the Board and the referee here.

ant to the previous discussion, however, the referee's findings are relevant as part of the record that the Board should have considered.

The Board's findings were as follows:

"The claimant was employed by the appellant from October, 1981 through January 11, 1982, at a final wage of $5.00 per hour. The claimant was discharged because of attendance. On January 6, 1982, he called in to advise that he was sick and would not be at work until January 11, 1982. He was late to work on January 11, 1982, and the following day he was absent without calling in. The claimant was also absent from work January 13, 14, and 15, 1982. The employer's representative testified they had arranged for the claimant to get a ride into work on January 15, 1982, because he stated he was unable to get into the plant due to car trouble. The claimant did not show up at the pick-up point for the ride. He was not at work the following week January 18, 1982, through January 22, 1982, and was thereafter discharged. The claimant responded that he was either sick or unable to get to work because of the extreme cold and could not get his car started.

The claimant's discharge was for misconduct. He showed a disregard of his responsibilities toward his employer by his failure to be at work and, additionally, on frequent occasions, by his failure to even call in and notify them that he would not be there. He complained that he was unable to get his car started, however the employer had arranged for the claimant to get a ride. The claimant is ineligible for benefits from March 14, 1982, and thereafter, until he has been re-employed and has had earnings in each of four calendar weeks which equal or exceed his current weekly benefit amount, under the provisions of Section 602 of The Illinois Unemployment Insurance Act."

Besides the two minor findings discussed in the first issue as unsupported by the evidence, Gregory challenges three major findings of the Board: (1) that he was fired for failing to appear or call at work for the week of January 18, 1982; (2) that he did not meet the ride arranged for him on January 15, 1982; and (3) that he often failed to notify his employer when he did not come to work.

Gregory's characterization of the first finding is not totally accurate: the Board did find that he was discharged because of attendance problems, but the Board noted absences on January 12 through 15 as well as those of the following week. The dispute between the parties is more precisely the question of when Gregory was actually fired. Gregory testified that when he called into work Monday the 18th to

report that he still could not come in to work because of his car troubles, he asked his supervisor if he was terminated and received an affirmative reply. This was supported by Ms. Grenus' testimony that she spoke to the supervisor on Friday the 15th and was told that "he [Gregory] comes in Monday for sure or he would be fired." Mrs. Campbell, on the other hand, testified that Gregory was not terminated until January 21 because "we have to wait for four days," presumably meaning four days of unreported absences. Mrs. Campbell thought that Gregory's supervisor had notified Gregory, but did not know how Gregory had been terminated. The referee apparently believed Gregory because he found that the claimant was discharged on January 15, 1982, after missing just two days of work.

Findings of an administrative agency on questions of fact are to be held *prima facie* true and correct and, if the issue is merely one of conflicting testimony and credibility of a witness, the agency's determination should be sustained. (*Batley v. Kendall County Sheriff's Department Merit Com.* (1981), 99 Ill. App. 3d 622, 425 N.E.2d 1201.) Mrs. Campbell's testimony adequately supports the Board's finding that Gregory was not fired until his second week of missing work.

With regard to the ride arranged for Friday the 15th, it is undisputed that Gregory failed to meet the ride. Gregory explained that he arrived at the pickup point a few minutes late because of the severe wintry conditions. Further, he tried to hitchhike but was unsuccessful. Gregory argued that the evidence on this point shows no intentional harm to his employer's interest. The fact remains that Gregory failed to meet his ride and, when considered in the context of his other conduct, supports the inference that "[h]e showed a disregard of his responsibilities toward his employer ***."

Finally, with regard to Gregory's failures to call in to report his absences, he points out that he called in on January 13 and 14 and he argues that whether he called in the following week is irrelevant because he was already fired. However, Mrs. Campbell testified that Gregory called in late on both the 13th and 14th and that he failed to call in at all on the 15th and on the following four work days. Gregory conceded that he did not call in after missing his ride on the 15th, but explained that Ms. Grenus had already talked to his supervisor. Most importantly, since it was found that Gregory was not fired until later in the week of the 18th, his failures to call in that week are indeed relevant.

In sum, the Board's findings, with two minor exceptions, are supported by the manifest weight of the evidence. Those findings support the determination of the Board that Gregory was discharged for mis-

conduct. Accordingly, we affirm the order of the circuit court of Lake County which affirmed the Board's decision.

Affirmed.

SEIDENFELD, P.J., and HOPF, J., concur.