STEVEN B. LACHENMYER, Plaintiff-Appellant, v. LOLETA A. DIDRICK-SON, Director of the Department of Employment Security, *et al.*, Defendants-Appellees.

Fourth District   No. 4—93—0492

Argued April 20, 1994.—Opinion filed June 23, 1994.

Ora J. Baer II, of Law Offices of Ora J. Baer II, of Champaign, for appellant.

Richard P. Klaus (argued) and Charles L. Palmer, both of Flynn, Palmer & Tague, of Champaign, for appellee Archer-Daniels-Midland Corp.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jessie A. Wang-Grimm, Assistant Attorney General (argued), of counsel), for other appellees.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Steven B. Lachenmyer, brought an action for administrative review pursuant to the Administrative Review Law (Review Law) (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 *et seq.*) in the circuit court of Champaign County after his award of unemployment benefits was reversed by the Illinois Department of Employment Security Board of Review (the Board). The decision by the Board was affirmed by the circuit court. Plaintiff appeals, claiming the Board lacked jurisdiction to review the decision and was arbitrary and capricious in failing to rule on his objections to its jurisdiction; the Board denied him due process; the Board improperly found him to have committed "misconduct"; and the circuit court erred in failing to default defendant Archer-Daniels-Midland Corp. (ADM) in the administrative review proceedings. We affirm.

## FACTS

From December 19, 1990, to March 20, 1991, plaintiff was employed by ADM as a staff auditor. On February 16 and 17, 1991, while on an out-of-town auditing assignment, plaintiff was involved in two separate incidents in which he swore at a fellow auditor and shoved another auditor into a wall. These incidents were later reported to the plaintiff's supervisor, who issued a verbal warning to plaintiff on February 19 about his behavior. Specifically, plaintiff was

told his acts of pushing, shoving and cursing colleagues were unacceptable conduct which would result in termination of employment for wilful misconduct if ever repeated. Plaintiff was urged to learn to get along with co-workers. Following this meeting, plaintiff publicly apologized to the co-workers involved in the previous incidents.

In March 1991, plaintiff was on another out-of-town auditing assignment. Plaintiff was observed by his audit manager as he threw a work paper folder at the lead auditor, who was plaintiff's direct supervisor on the job. Upon returning to ADM headquarters, the audit manager reported the incident to plaintiff's supervisor. On March 20, 1991, the supervisor conducted a review with plaintiff regarding his conduct toward co-workers and discharged plaintiff from ADM.

On March 21, 1991, plaintiff filed a claim for unemployment benefits with defendant, Illinois Department of Employment Security (IDES). On April 1, 1991, the Frick Company (Frick), an authorized agent of ADM, sent a letter to IDES regarding plaintiff's possible ineligibility to receive unemployment benefits due to discharge for unsatisfactory work performance. IDES acknowledged receipt of the protest on April 6 and issued a response on that date, finding ADM's protest sufficient as an allegation of discharge for misconduct under section 602 of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 432(A)). Plaintiff was interviewed by a claims adjudicator for IDES on April 8, and on April 9 IDES issued him notice of his eligibility for benefits beginning March 24, 1991. The record does not indicate any notice was sent to ADM or its agent Frick, however.

On July 20, 1991, Frick's unemployment claims specialist wrote to IDES indicating ADM had been assessed for plaintiff's benefits but no notice of a determination had been received by ADM. An internal IDES memorandum dated September 12, 1991, stated an "employer decision" was needed by September 19, 1991. On September 18, IDES sent a notice of plaintiff's eligibility for benefits to ADM and confirmed ADM's party status. The determination set forth an appeal date of October 18, 1991.

On October 18, ADM sent a letter of appeal to IDES stating plaintiff was "discharged due to unacceptable performance and behavior. Despite prior warnings, the claimant continued to act in a manner which he knew would jeopardize his employment." ADM requested a hearing. A hearing was held by an IDES referee, who affirmed the decision of the claims adjudicator granting benefits to plaintiff on November 21, 1991.

ADM sent a letter of appeal to the Board on December 19, 1991.

Written arguments were submitted to the Board and on August 7, 1992, the Board reversed the decision of the referee. Plaintiff later filed a complaint for administrative review seeking review of the Board's reversal of the grant of unemployment insurance benefits. The circuit court affirmed the Board's decision. This appeal followed.

## ANALYSIS

■ Plaintiff's first claim of error is ADM did not file a timely appeal with IDES and the Board failed to rule on this objection. He claims the Board's failure to rule on the jurisdictional question was arbitrary and capricious as section 2720.335 of title 56 of the Illinois Administrative Code (56 Ill. Adm. Code § 2720.335 (1992)) requires the Board to set forth in writing the factual and legal basis for its decision. Plaintiff argued the issue before both the referee and the Board but failed to get a specific determination of the issue. Where the Board explicitly states it has reviewed the entire record in reaching its decision, a claimant has no basis for contending the Board failed to consider a particular matter. A specific evidentiary finding is not necessary when there is evidence in the record to support the finding. (See *Nichols v. Department of Employment Security* (1991), 218 Ill. App. 3d 803, 811, 578 N.E.2d 1121, 1127-28.) Here, the Board asserted it had conducted a complete review of the record, which included plaintiff's arguments on the issue. Thus, the Board did consider plaintiff's arguments and the evidence in the record supports a finding it had jurisdiction.

The notice IDES sent plaintiff on April 9, 1991, listed ADM c/o J. Frick at the top of the letter. Plaintiff claims the internal paperwork of IDES indicates the notice, referred to by form number, was mailed to ADM. Thus, plaintiff argues, pursuant to section 800 of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 470) and section 2720.200(b) of title 56 of the Illinois Administrative Code (56 Ill. Adm. Code § 2720.200(b) (1992)) requiring an appeal to be filed within 30 days after the determination was mailed to the parties, the appeal was due by May 9, 1991. ADM sent its appeal request on October 18, 1991.

The time period for filing an appeal from an adjudicator's determination is mandatory and operates as a statute of limitations. (*Hernandez v. Department of Labor* (1981), 83 Ill. 2d 512, 517, 416 N.E.2d 263, 266.) Both the referee and the Board lack jurisdiction to reach the merits of an appeal of an adjudicator's decision that has been untimely filed. (See *Camarillo v. Department of Labor* (1984), 129 Ill. App. 3d 387, 390, 472 N.E.2d 825, 827.) However, there is nothing in this record to indicate either ADM or its agent Frick received notice of the adjudicator's decision before Frick wrote IDES on July 20,

1991, requesting notification of the decision. To the contrary, the evidence shows a copy of the determination of the adjudicator was mailed to ADM on September 18, 1991. When an employer receives notification of the adjudicator's determination on a date later than the claimant, the employer's 30-day period for filing the appeal begins to run on the *later* date. (*Finik v. Department of Employment Security* (1988), 171 Ill. App. 3d 125, 131-32, 524 N.E.2d 1148, 1152-53.) Thus, ADM's appeal was timely filed and both the referee and the Board had jurisdiction over this matter.

■ Plaintiff next claims he was denied due process because the Board decided ADM's appeal in a *de novo* proceeding without applying any standard of review. Plaintiff contends the Act provides an organizational structure for adjudicating and reviewing claims similar to the court system in Illinois, thus making the Board similar to an appellate court. Plaintiff acknowledges the Board, unlike an appellate court, has the power to take additional evidence in coming to its decision (see Ill. Rev. Stat. 1991, ch. 48, par. 473) but argues where the Board finds, as in this case, no additional evidence is needed because the record is adequate, the Board should apply the standard of review of an appellate court and only reverse a referee's decision if it is against the manifest weight of the evidence.

The statutory framework of IDES anticipates that a claimant would apply for benefits and a claims adjudicator would decide whether he should receive benefits without a full hearing. (Ill. Rev. Stat. 1991, ch. 48, par. 452.) Referees are then available to handle appeals and hold an evidentiary hearing on the matter before issuing a decision. (Ill. Rev. Stat. 1991, ch. 48, par. 471.) The ultimate fact-finding and decision-making body within the Department, however, is the Board. (*Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 379, 465 N.E.2d 1052, 1056.) The Board is empowered to review the entire record and supplement it by receiving new evidence if deemed necessary. (Ill. Rev. Stat. 1991, ch. 48, par. 473.) This is unlike the court system and appellate review. The Board is not entitled to hold a hearing *de novo*. It must consider the record already existing in the case but because it can also take additional evidence and is the ultimate fact finder, it does not operate strictly as an appellate court.

The degree of deference the Board must apply to a referee's findings has already been set forth by the court in *Gregory*:

"The Board, as the ultimate finder of fact, is not bound by the referee's decision and may actually expand the record prepared by the referee. It is the decision of the Board, not the referee, which is reviewed by the courts. *** [W]e infer that the Board is to make its own independent assessment of the evidence on record

and need not defer to the findings of the referee \*\*\*." (*Gregory*, 125 Ill. App. 3d at 379, 465 N.E.2d at 1056.)

The Board is obligated to consider the referee's findings but must also review the record and make its own independent assessment of the evidence. The referee is only one fact finder in the administrative process, and the Board is the ultimate fact finder with authority to affirm, modify or set aside a referee's decision. *Gregory*, 125 Ill. App. 3d at 379, 465 N.E.2d at 1055-56.

Plaintiff argues the findings of the referee should be given great deference because not to do so would be a denial of due process where the Board did not actually hear the witnesses giving the evidence. Contentions such as this have been repeatedly rejected by the Supreme Court of Illinois:

"In *Homefinders, Inc.*, this court reviewed the relevant Supreme Court and other Federal decisions and stated that those 'decisions have consistently recognized that, in the absence of statutory provisions to the contrary, it is not necessary that testimony in administrative proceedings be taken before the same officers who have the ultimate decision-making authority. [Citations.] \*\*\* [A]dministrative proceedings may be conducted by hearing officers who refer the case for final determination to a board which has not "heard" the evidence in person. The requirements of due process are met if the decision-making board considers the evidence contained in the report of proceedings before the hearing officer and bases its determination thereon. [Citations.]' " (*Starkey v. Civil Service Comm'n* (1983), 97 Ill. 2d 91, 100, 454 N.E.2d 265, 269, quoting *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 128-29, 357 N.E.2d 785, 791.)

While *Starkey* was a situation where the hearing officer's sole function was to hear evidence and make a recommendation to the fact finder, there still would be no due process violation in cases such as the instant one where the Board, acting as both the ultimate decision-making authority within the administrative agency and a body to whom appeals are taken, bases its decision upon review of the evidence taken by the referee.

The referee found plaintiff eligible for unemployment benefits because he did not violate company rules intentionally. The Board reversed that decision, finding plaintiff had engaged in misconduct through the "intentional and provocative act of insubordination." Plaintiff asserts the finding of the Board was erroneous.

Section 602(A) of the Act defines "misconduct" as:

"the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed

the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." Ill. Rev. Stat. 1991, ch. 48, par. 432(A).

■ While unemployment insurance benefits are a conditional right and the burden of establishing eligibility rests with the claimant, the Act must be liberally interpreted to favor the awarding of benefits. (*Adams v. Ward* (1990), 206 Ill. App. 3d 719, 723, 565 N.E.2d 53, 56.) In a case involving a claim for unemployment benefits, the findings of fact by the Board are considered *prima facie* true and correct. (Ill. Rev. Stat. 1991, ch. 110, par. 3—110; *Grant v. Board of Review of the Illinois Department of Employment Security* (1990), 200 Ill. App. 3d 732, 734, 558 N.E.2d 438, 440.) The function of a reviewing court in such a case is to determine whether the Board's findings were against the manifest weight of the evidence. (*Nichols*, 218 Ill. App. 3d at 809, 578 N.E.2d at 1126.) A reviewing court should not substitute its judgment for that of the agency unless the record lacks substantial evidence in support of the agency's findings. *Collier v. Department of Employment Security* (1987), 157 Ill. App. 3d 988, 993, 510 N.E.2d 623, 626.

Employers have the right to expect a certain standard of behavior from their employees in matters which directly concern their employment, and they may have reasonable rules to regulate that behavior. (See *Bandemer v. Department of Employment Security* (1990), 204 Ill. App. 3d 192, 195, 562 N.E.2d 6, 7, citing *Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 475 N.E.2d 879.) The existence of a reasonable rule or policy does not have to be proved by direct evidence, but can be found by a court to exist through a commonsense realization that some behavior intentionally and substantially disregards an employer's interest. *Meeks v. Department of Employment Security* (1990), 208 Ill. App. 3d 579, 585, 567 N.E.2d 481, 485-86.

Plaintiff asserts throwing a file on a desk in the direction of the lead auditor was evidence only of personality conflicts with fellow employees and was not legally sufficient to be characterized as misconduct. He contends there was no evidence of a rule or policy which he violated. He also asserts because there was no injury or harm done to ADM or its employees, there was no demonstration of harm within the meaning of the Act.

In the three months plaintiff was employed by ADM he alienated five different auditors to the point where they did not want to work with him. He accomplished this by cursing at them, shoving them against a wall and throwing files at them. Plaintiff acknowledged he had been told after the initial incident of shoving and cursing he

must learn to get along with co-workers or he would be terminated. Wilful behavior stems from employee awareness of a company rule that is disregarded by the employee. (See *Washington v. Board of Review* (1991), 211 Ill. App. 3d 663, 668, 570 N.E.2d 566, 570.) Common sense implies the existence of a policy against not only physical threats and violence but also throwing objects at supervisors even if plaintiff had not been warned about getting along with fellow workers. ADM and its employees were harmed in an inability on the part of the other auditors to perform their duties as required because no one would work with plaintiff.

Plaintiff's behavior was sufficient reason to discharge him. We find the Board's conclusions his conduct (1) constituted "an intentional and provocative act of insubordination rather than an effort to get along with a co-worker" and (2) was within the level of wilful misconduct contemplated by the Act are not against the manifest weight of the evidence.

■ Finally, plaintiff asserts the circuit court in the administrative review proceedings should have defaulted ADM because it failed to timely file an entry of appearance. Plaintiff filed his complaint for administrative review on September 11, 1992. He maintains summonses issued that same day, which means appearances were due by October 16, 1992. The Board filed its appearance on that date. On December 7, 1992, plaintiff filed a motion for default against ADM as no appearance had yet been filed on its behalf. ADM filed an entry of appearance on December 8 and moved for an extension of time in which to plead. Later, the circuit court granted the motion for extension of time and denied plaintiff's motion for default.

Plaintiff maintains ADM should have been required to show good cause why it should be allowed to avoid a default judgment and file late. A trial court has considerable discretion to deny a default judgment because of its drastic nature. (*Schoonover v. American Family Insurance Group* (1992), 230 Ill. App. 3d 65, 70, 595 N.E.2d 230, 234.) Such judgments are not encouraged and should be employed with great caution and only as a last resort. *Campbell v. White* (1989), 187 Ill. App. 3d 492, 502, 543 N.E.2d 607, 614.

Plaintiff cannot show he suffered any harm by ADM's delay in filing its appearance. While the Review Law requires all parties desiring to appear must file an entry of appearance in the time fixed by supreme court rule (Ill. Rev. Stat. 1991, ch. 110, par. 3—106), in an administrative review proceeding, the only answer required is the record of the administrative agency (Ill. Rev. Stat. 1991, ch. 110, par. 3—108(b)), which was filed in a timely manner by the Board. We find no abuse of discretion in the denial of plaintiff's motion for a default judgment.

For these reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

COOK and LUND, JJ., concur.