COOK COUNTY FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff-Appellant, *v.* TIMOTHY J. GRIFFIN, Commissioner of Savings and Loan Associations, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-236

Opinion filed June 5, 1979.—Rehearing denied July 5, 1979.

Gomberg & Sharfman, Ltd., of Chicago (David L. Gomberg, Robert J. Sharfman, and Raymond J. Ostler, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellee Timothy J. Griffin.

Walter W. Morrissey, of Oak Brook, for appellees Unity Savings Association and Wabash Building and Loan Association.

Mr. JUSTICE DOWNING delivered the opinion of the court.

Plaintiff, Cook County Federal Savings and Loan Association, appeals two orders of the circuit court of Cook County entered pursuant to the Administrative Review Act. (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) The first order denied plaintiff's motion to compel defendant Timothy J. Griffin, Commissioner of the Illinois Savings and Loan Associations ("Commissioner"), to file supplemental documents in answer to the plaintiff's complaint. The second order affirmed the Commissioner's approval of defendant Wabash Building and Loan Association's ("Wabash's") application to relocate in Chicago, Illinois, contingent upon the sale of its assets to defendant Unity Savings Association ("Unity").

Although several issues were raised on this appeal, the determinative question is whether the Commissioner's refusal to supply the plaintiff, the trial court, and this court with all of the evidence he considered in approving defendants Unity and Wabash's applications deprived plaintiff of a fair hearing and precluded judicial review of his decision. Because we find that this question must be answered affirmatively, we need not, and indeed cannot consider the plaintiff's contention that the Commissioner's decision was against the manifest weight of the evidence and was therefore improperly affirmed by the trial court.[1] Therefore, only those facts relevant to the foregoing inquiry need be set forth.

Effective October 1, 1973, section 1—11 of the Illinois Savings and Loan Act (the Act) (Ill. Rev. Stat. 1973, ch. 32, par. 711) was enacted to require all Illinois savings and loan associations to acquire insurance prior to June 30, 1975. At that time Wabash was an uninsured building and loan association located in Louisville, Illinois. Upon being advised of the foregoing insurance requirement, Wabash entered into an "Agreement of Purchase and Sale" with Unity on March 30, 1974. This agreement was conditioned upon the Commissioner's approval of Wabash's application

---

[1] We have considered the defendants' contentions that this appeal should be dismissed due to the plaintiff's alleged failure to file an objection within 30 days of the legal notice as required by a Commission regulation and for failure to name all parties before the Commissioner as required by section 8 of the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 271) and find them to be without merit.

to relocate in Chicago and to maintain its present facility in Louisville. The record establishes that in late August of 1974, the Commissioner received copies of this agreement, Unity and Wabash's resolutions approving the transaction, and a three-year projection of Unity's financial condition ending in 1977. At oral argument before this court the attorney for defendants Unity and Wabash stated that they were required to file such financial projections with their applications pursuant to a regulation of the Commissioner.

Thereafter, Unity filed an application to maintain a facility in Wabash's Louisville offices and to organize a facility in the vicinity of Lincoln, Devon, and Kimball Avenues in Chicago, Illinois. Wabash later filed a similar application to relocate to the aforementioned Chicago location and to maintain its Louisville facility. Written objections were received from plaintiff and several other savings and loan associations and banks located within the vicinity of the proposed Chicago office. Thereupon the Commissioner held a public hearing on June 30, 1975, in which the parties presented evidence of the need for the proposed Chicago office, the injury to existing associations in the vicinity of the proposed office, and Wabash's ability to meet the capital requirements of the Act. Upon his review of the complete record in the matter, the evidence and testimony recorded at the public hearing, and the recommendation of the "hearing officer," the Commissioner approved the defendant's application.[2]

Pursuant to the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), the plaintiff filed a complaint in the circuit court of Cook County alleging *inter alia* that the findings of the hearing officer and of the Commissioner were not supported by the record. The plaintiff's complaint sought an order requiring the Commissioner to file the complete record in the matter with the court and an order for a new hearing. Shortly thereafter, the Commissioner approved the bulk sale of Wabash's assets to Unity and answered plaintiff's complaint.

Plaintiff filed, in the trial court, a motion to strike the answer or to order a more full and complete answer which would include all interoffice memoranda, all analyses and marketing studies, and all applications relating to the bulk sale. The trial court's order granting this motion was subsequently vacated. During the trial court hearing, plaintiff's renewed motion to strike or supplement the answer was again denied. However, finding the record of the June 30, 1975, hearing to be both procedurally and substantively inadequate, the trial court remanded the matter to the Commissioner for

---

[2] The Commissioner's order of approval states in part:

"WHEREAS, I have carefully reviewed the complete record in the matter, and

WHEREAS, a public hearing on said application was held, evidence and testimony recorded and a report of the Hearing Officer was duly filed, ° ° °."

a supplemental hearing. Although the trial court ordered that evidence concerning the bulk sale was to be admitted at the supplemental hearing, it thereafter quashed the plaintiff's subpoena requiring the Commissioner to appear before the hearing officer with certain documents relating to that bulk sale.

Before, during, and after the March-April 1977 supplemental hearing, plaintiff made numerous requests for the Commissioner's file relating to the bulk sale and other documents pertaining to Unity's financial condition. In response to one of these requests, the Commissioner wrote to the hearing officer in part as follows:

> "It has been my position that the question of the bulk sale and financial stability of any parties involved in the Application to Relocate having nothing to do with the hearing that you were charged to conduct. Those issues are not for public consumption; but, rather, are highly confidential, supervisory in nature and are being dealt with internally by this Office. * * * Let me assure you that it was my intention to pull every item from the file that referred to financial data, because that is my responsibility."

After noting the testimony and exhibits introduced at the supplemental hearing pertaining to Unity's capital and its ability to support the transaction, the hearing officer made no recommendation on these questions finding that "the question of capital requirements lies solely within the purview of the Commissioner's expertise and discretion." In approving the defendants' applications, the Commissioner again stated that his decision was based on his review of "the file before the Office of the Commissioner of the Savings and Loan Association relative to this matter" and on "the evidence before the duly authorized Hearing Officer."

Upon its review of the supplemental hearing, the trial court again denied plaintiff's renewed motion to compel the Commissioner to supplement his answer with the documents in his bulk sale file. Thereafter, the plaintiff amended its complaint to allege *inter alia* that the Commissioner's failure to supply it with these documents violated its due process rights. The trial court subsequently affirmed the Commissioner's decision approving the defendants' applications.

## I.

The Commissioner's consideration of Wabash's application to relocate to Chicago in conjunction with the bulk sale of its assets to Unity was statutorily sanctioned by Public Act 79-968 effective October 1, 1975, amending section 1—9 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1975, ch. 32, par. 709; see also *Skokie Federal Savings & Loan Association v. Illinois Savings & Loan Board* (1st Dist. 1978), 61 Ill. App. 3d 977,

983-90, 378 N.E.2d 1090). Also effective on October 1, 1975, shortly before the Commissioner's initial decision, section 3—4(h) of the Act was amended to provide in pertinent part that:

"(h) If a by-law amendment provides for a change in the location of an association's business office or the establishment of an additional office, the Commissioner shall not approve the amendment unless he finds that * * * (2) the capital of the association meets the minimum initial capital requirements for a new office as established by regulation of the Commissioner; [and] * * * (5) there are no matters pertaining to the association which are of supervisory concern to the Commissioner." (Ill. Rev. Stat. 1975, ch. 32, par. 744(h).)

The regulation adopted by the Commissioner to effect subparagraph (2) of section 3—4(h) allows the Commissioner to consider the capital of the acquiring institution in determining compliance with the minimum capital requirements in the case of a supervisory bulk sale of the assets of an uninsured association conditioned on a change of location ("Rules and Regulations of the Illinois Savings and Loan Commissioner," article IV, section 1).

We believe that this regulation, the Commissioner's approval of the bulk sale, and Unity's proposed management of the Chicago office make it apparent that section 3—4(h) required consideration of and findings pertaining to Unity's capital to support the transaction and other matters pertaining to Unity which may have been of concern to the Commissioner. Moreover, section 2—4 of the Act (Ill. Rev. Stat. 1975, ch. 32, par. 724) required the Commissioner to find, among other things, that the general character of Unity's proposed management of the Chicago office was such as to assure a reasonable probability of success before a permit to organize the new association would be issued.

The plaintiff contends that evidence in the Commissioner's bulk sale file on which he relied in making his findings on these issues was neither admitted at the hearings nor made known to it. However, the Commissioner maintains that the documents in the bulk sale file which the plaintiff seeks are confidential and are not for public consumption.

■■ ■ As this court stated in *Hazelton v. Zoning Board of Appeals* (1st Dist. 1977), 48 Ill. App. 3d 348, 351, 363 N.E.2d 44:

"It is well settled in Illinois that an administrative agency cannot base its decision upon facts, data, and testimony which do not appear in the record. [Citations.] Findings must be based on evidence introduced in the case, and nothing can be treated as evidence which is not introduced as such. [Citations.] The rationale for restricting findings to evidence produced at the hearing is that due process of law requires that all parties have an

opportunity to cross-examine witnesses and to offer evidence in rebuttal. [Citations.]"

Howard Bass, Unity's senior vice-president and secretary, testified at the supplemental hearing that as of March 31, 1976, Unity complied with the Federal insurance reserve and net worth requirements. Unity's annual financial statements for the years 1972 to 1976 introduced at the hearing supported this testimony. The statements of condition of Unity and Wabash as of March 31, 1974, were available to the plaintiff. However, Bass further testified that he expected Unity to fully comply with these requirements in 1977. The record establishes that the Commissioner "pulled from the file" Unity's financial projection for the three-year period ending in 1977.[3] This projection was never disclosed to the plaintiff. As a result, the plaintiff had no opportunity to cross-examine Bass on this projection. Moreover, at oral argument before this court, the Commissioner's attorney stated that the Commissioner had relied on this projection in making his decision as to Unity's capital to support the transaction. A decision based on evidence not in the record is a procedure not to be condoned. Under these circumstances, we do not think that it can be said that the plaintiff received a fair hearing essential to due process. See *Ohio Bell Telephone Co. v. Public Utilities Com.* (1937), 301 U.S. 292, 300, 81 L. Ed. 1093, 57 S. Ct. 724.

The Commissioner justifies his action on the basis of confidentiality and privilege from disclosure. It is suggested that the Commissioner's supervisory authority "allows him to receive sensitive financial information without making it available to the public." The attorney for the defendant associations admitted at oral argument before this court that one of the regulations relied upon in support of this claim was not in effect at the time of these proceedings.[4] Moreover, we question the applicability of a second regulation dictating confidentiality for financial projections filed with the Commissioner in the context of these proceedings. As stated recently by the United States Supreme Court in *Herbert v. Lando* (1979), 47 U.S.L.W. 4401, 4406:

"Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances. The President, for example, does not have an absolute privilege against disclosure of material subpoenaed for a judicial proceeding. *United States v. Nixon*, 418 U.S. 683 (1974). In so holding, we found that although the President has a powerful interest in confidentiality of communications between himself and his advisers, that interest must yield to a demonstrated specific

---

[3] As noted previously, Unity was required to file this financial projection pursuant to section 11 of the Commissioner's "Instructions For Filing Applications."

[4] Article X, section 6(k) of the Commissioner's Rules and Regulations was not adopted until December 31, 1977.

need for evidence. As we stated, in referring to existing limited privileges against disclosure, '[w]hatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.' *Id.*, at 710."

■■ The fact that the hearings before the Commissioner were technically investigations for the public interest does not make those hearings any the less adversary in nature. (See *United States v. Abilene & Southern Ry. Co.* (1924), 265 U.S. 274, 288-89, 68 L. Ed. 1016, 44 S. Ct. 565.) Therefore, we believe the principles enunciated in *Herbert* are equally applicable to the instant case. With these principles in mind, we decline to construe the Commissioner's regulation so expansively as to uphold his claim of privilege against disclosure in light of the plaintiff's due process right to a fair hearing.

## II.

However, the Commissioner's action is subject to an objection even deeper. In *Ohio Bell Telephone Co. v. Public Utilities Com.* (1937), 301 U.S. 292, 81 L. Ed. 1093, 57 S. Ct. 724, the defendant Commission had ordered the telephone company plaintiff to refund to its patrons "excess" earnings collected during a series of years. In determining the amount to be refunded, the Commission had valued the company's property on the basis of evidence of which it took judicial notice but which it withheld from its records and refused to reveal to either the plaintiff or to the Ohio Supreme Court which had affirmed the Commission's decision. After holding that the fundamentals of a trial had been denied the plaintiff due to the Commission's reliance on evidence not admitted at the hearing (*Ohio Bell Telephone Co.*, at 300), the Supreme Court stated:

"From the standpoint of due process—the protection of the individual against arbitrary action—a deeper vice is this, that even now we do not know the particular or evidential facts of which the Commission took judicial notice and on which it rested its conclusion. Not only are the facts unknown; there is no way to find them out. When * * * government reports are put in evidence upon a trial, the party against whom they are offered may see the evidence or hear it and parry its effect. Even if they are copied in the findings without preliminary proof, there is at least an opportunity in connection with a judicial review of the decision to challenge the deductions made from them. The opportunity is excluded here. * * * This will never do if hearings and appeals are to be more than empty forms." *Ohio Bell Telephone Co.*, 301 U.S. 292, 302-03, 81 L. Ed. 1093, 1100-01, 57 S. Ct. 724, 729-30.

Noting that the Ohio Supreme Court had been limited in its review to

a consideration of the record made by the Commission, the court continued:

> "In such circumstances judicial review would be no longer a reality if the practice followed in this case were to receive the stamp of regularity. To put the problem more concretely: how was it possible for the appellate court to review the law and the facts and intelligently decide that the findings of the Commission were supported by the evidence when the evidence that it approved was unknown and unknowable? * * * What the Supreme Court of Ohio did was to take the word of the Commission as to the outcome of a secret investigation, and let it go at that. 'A hearing is not judicial, at least in any adequate sense, unless the evidence can be known.' [Citations.]" *Ohio Bell Telephone Co.*, 301 U.S. 292, 303-04, 81 L. Ed. 1093, 1101, 57 S. Ct. 724, 730.

■ As in *Ohio Bell*, the trial court below in the instant case could not, upon administrative review of the Commissioner's decision, hear further evidence, or conduct a hearing *de novo* (*Lamar v. Illinois Racing Board* (1st Dist. 1977), 55 Ill. App. 3d 640, 647, 370 N.E.2d 1241), but rather could search only the record to determine if the findings are supported by the evidence (*North Shore Sanitary District v. Pollution Control Board* (2d Dist. 1972), 2 Ill. App. 3d 797, 801, 277 N.E.2d 754). Section 9 of the Administrative Review Act placed the responsibility upon the Commissioner to file as an answer to the plaintiff's complaint "the original or a certified copy of the entire record of [the] proceedings under review, including such evidence as may have been heard by [him] and the findings and decisions made by [him]." (Ill. Rev. Stat. 1977, ch. 110, par. 272(b).) The Commissioner's attorney admitted at oral argument before this court that the record filed by the Commissioner did not include all of the evidence on which he had relied.

■ Adopting the rationale of the court in *Ohio Bell*, we agree with the plaintiff's contention that section 9 of the Administrative Review Act must be construed to require that all the evidence on which an agency relies in reaching its decision must be made a part of the record for review even though such evidence was improperly not introduced at the administrative hearing. Such a construction is necessary not only to allow an after-the-fact challenge to the evidence improperly withheld, but also to preserve the substance of judicial review.

### III.

■ Plaintiff also challenges the Commissioner's appointment of a hearing officer. In our opinion, the authority of the Commissioner to appoint a hearing officer cannot be disputed. (See Ill. Rev. Stat. 1977, ch. 32, pars. 710.04, 841.2, and 863; article II, section 2 and article XIV, section 2(e) of

the Rules and Regulations of the Commission.) Upon remand we assume the Commissioner will comply with the provisions of the statute and regulations should a hearing officer be necessary for the further proceedings.

## IV.

In our opinion, the trial court's affirmance of the Commissioner's decision was based on an insufficient record. Accordingly, we reverse the trial court's order of affirmance and remand the matter to the trial court with directions to enter an order (a) reversing the findings of the Commissioner, (b) directing the Commissioner (i) to reopen the hearing on the said matter, (ii) to provide the plaintiff and its attorney, for such reopened hearing, with all the documents, information, and data relating to the bulk sale of Wabash's assets to Unity, and (iii) after the conclusion of such hearing, to enter such finding and order as is deemed appropriate and then return the cause to the circuit court of Cook County, and (c) for such action as that court then deems appropriate.

Reversed and remanded with directions.

STAMOS, P. J., and PERLIN, J., concur.